# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 25, 2011 Session

## LESLIE NEWMAN, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE  v. SMART DATA SOLUTIONS, LLC, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 10-507-III    Ellen Hobbs Lyle, Chancellor

---

### No. M2010-01938-COA-R3-CV - Filed June 3, 2011

---

This is an appeal of the grant of an application by the Commissioner of Insurance for the State of Tennessee to place an allegedly illegal insurance enterprise into receivership for purposes of liquidation pursuant to the Insurers Rehabilitation and Liquidation Act, Tenn. Code Ann. § 56-9-101, *et. seq.*  Respondents contend they are not insurers subject to the Rehabilitation and Liquidation Act and that, because the court found that the insurance was nonexistent, the appointment of a receiver of the businesses was not authorized.  Finding that the activities of the various respondents constitute "insurance business" as defined by the applicable statute and that placing the businesses into receivership was proper, we affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Stephen C. Knight and Nader Baydoun, Nashville, Tennessee, for the appellants, Smart Data Solutions, LLC and American Trade Association, Inc.

John L. Norris, Nashville, Tennessee, for the appellant, William M. Worthy, II.

Robert E. Cooper, Jr., Attorney General and Reporter, Sarah A. Hiestand, Senior Counsel, Lyndsay F. Sanders, Assistant Attorney General, and Laura T. Kidwell, Senior Counsel, for the appellee, Leslie Newman, Commissioner of the Tennessee Department of Commerce and Insurance.

**OPINION**

## I. Background

On March 23, 2010, the Commissioner of Commerce and Insurance for the State of Tennessee filed a verified petition ("the petition") pursuant to the Insurers Rehabilitation and Liquidation Act, Tenn. Code Ann. § 56-9-101, *et. seq.* ("the Act") for injunctive relief and seeking to have a receiver appointed for purposes of liquidation of Smart Data Solutions, LLC ("SDS"), American Trade Association, Inc. ("ATA"), American Trade Association, LLC ("ATA LLC"), and Serve America Assurance ("SAA"). The petition also named eight individuals as respondents: Bart S. Posey, Sr., Angie Posey, Obed W. Kirkpatrick, Sr., Linda Kirkpatrick, Richard H. Bachman, Kristy Wright, William M. Worthy, II, and Colin Youell. Contemporaneous with the filing of the petition, the Commissioner filed an application (the "Application") for *ex parte* seizure of the business and assets of SAA, SDS, ATA and ATA LLC. The petition and application alleged that the entities and individuals constituted an unlicensed and unregulated insurance entity conducting insurance business in violation of Tenn. Code Ann. § 56-2-105. Statutory grounds for the relief requested were Tenn. Code Ann. § 56-9-301(1), (2) and Tenn. Code Ann. § 56-9-306(1), (2).

In pertinent part, the petition for appointment of receiver alleged as follows:

1. This is an action for receivership and injunction . . . to remove the hazard to the public presented by the Respondents' illegal solicitation and issuance of unauthorized health insurance contracts . . . and to liquidate all the related assets of this business enterprise. According to facts learned to date, Respondents from their shared principal offices and unlicensed administrative base in Springfield, Tennessee, and via website and marketers, solicit their customers nationwide, take premiums for, administer and fund, limited health insurance benefits that purport to be covered under a master insurance policy issued to their "association." However, the supposed master policy was issued by an unknown company identified as "Serve America Assurance, Ltd." that lacks authority to insure in Tennessee or in any other state. Now, it appears the policy ended in late 2009, or never existed. Each of the Respondents, to the extent coverage was promised or furnished, are functioning as the insurer and underwriting any benefits under the purported policy *themselves* without any legal authority. Numerous laws have been violated.
2. The financial and operational condition of this enterprise is hazardous and beyond repair. The Commissioner has heard of numerous claims denied or turned down unjustly, especially in other states. . . . Considering that any policy was at best unauthorized, and likely fictitious, and

2

considering the self-funding by wholly unauthorized actors, these entities pose irreparable harm to the members and the public.

3. Respondents' insurance issuance has occurred without being submitted to the Commissioner's authority, or any other state's insurance commissioner, and is designed to evade regulation. . . . Evidence is mounting that Respondents deny payment owing under policyholders' coverage. Respondents have failed to submit financial statements to the Commissioner, and are at risk for insolvency, wasteful practices and financial self-dealing. Their customers have been induced to purchase bogus health coverage, turning over millions of dollars of premiums, without any of the safeguards that the licensed carriers possess, and without the protections for solvency and consumer protection that accompany lawful insurance. The unlicensed, unauthorized and otherwise fraudulent, deceptive and unfair transactions by [respondents] present an immediate danger to the public health, safety or welfare of Tennessee policyholders, and to the public of several other states.

The application for *ex parte* seizure alleged, in pertinent part, as follows:

6. **Dangers of Delaying Ex Parte Seizure:** In light of these conditions, even the short period between the filing of the Liquidation Petition and a prompt hearing on that Petition exposes the creditors and the public to substantial risks of even more detrimental conduct by respondents until the hearing, unless explicit controlling orders are issued under this application. Until the issuance of orders on the Liquidation Petition, the Commissioner requires the statutory remedy of seizure established by the Act. Seizure grants immediate control of the ATA entities, SDS and SAA by taking possession and control of all property, books, bank and investment accounts, documents, claims files, computer systems and databases, and all other records in whatever form, and where located, of the ATA entities, SAA and SDS, and of the premises occupied by them for business transactions.

* * *

8. ATA has just taken steps to dissolve the corporation, has obtained additional business premises in Springfield, Tennessee, and may be preparing a transformation of its business operations and form that again would make it difficult for the insurance regulators to detect and lock down its activities. Thus, there is an immediate need to gain control and conserve the ATA entities', SAA's and SDS's operations and assets for the reasons discussed further herein.

* * *

10. The Commissioner is requesting an immediate order of seizure, a

3

summary proceeding under the Act, permitting her to seize the ATA entities', SAA's and SDS's business and assets based on the same facts alleged in the Liquidation Petition, plus accompanying exhibits. Under Tenn. Code Ann. § 56-9-201, seizure would vest control of the ATA entities', SAA's and SDS's business, including all records, wherever located and in whatever form, in the Commissioner for the duration of the seizure before appointment of a Receiver for Liquidation and would immediately enjoin disposition or transfer of the ATA entities', SAA's and SDS's assets without consent of the Commissioner. This control is justified because of the danger posed to the ATA entities', SAA's and SDS's customers, creditors, and the public; their interests would be endangered by delay in the vesting of such control during the pendency of the receivership action. Control should be granted to the Commissioner to also ensure that no additional health insurance contracts are negotiated and/or sold by the ATA entities, SAA and SDS, and to ensure that their property and assets, namely the property and assets obtained from their customers, are not transferred or otherwise disposed of. The Commissioner's control will assist other states' insurance commissioners in the enforcement of their orders against the writing of such unauthorized insurance in their states. Finally, the Commissioner's seizure of the ATA entities, SAA and SDS is vital to provide the Commissioner direct access and control of financial accounts, records, and data within ATA, SAA and SDS.

11. . . .[T]he Commissioner does not believe that any lesser remedy would provide the necessary control required to prevent additional damage caused by their unlicensed activities. Therefore, an order of seizure must be in place until an order of liquidation is entered by this Court. Seizure is authorized to be issued ex parte and without a hearing under Tenn. Code Ann. § 56-9-201.

On the basis of the petition, the application, and the supporting exhibits and affidavits, the court found that seizure was appropriate under Tenn. Code Ann. § 56-9-201 and entered an order *ex parte* permitting the Commissioner to seize SDS, ATA, ATA LLC, and SAA. A further hearing on the petition for liquidation was held on April 6.

Thereafter, SDS, ATA, ATA LLC, Bart Posie and Angie Posey filed a response in opposition to the petition and moved to dismiss the proceeding, accompanied by numerous affidavits and exhibits. Kristy Wright, Obed Kirkpartick and Linda Kirkpatrick filed separate responses to the petition, accompanied by affidavits and exhibits. On April 14, the court entered a Memorandum and Order in which the court found, *inter alia*, that ATA and SDS were *de facto* insurers, that they came within the state's liquidation powers, and that the further transaction of business by ATA and SDS would pose a hazard to the public. The

4

court granted the petition for liquidation under Tenn. Code Ann. § 56-9-306(3), but stayed the liquidation pending the outcome of a hearing on the additional ground of insolvency; the court ordered that the seizure remain in effect. Following an evidentiary hearing held on April 26, the trial court entered an order on April 27 finding that SDS, ATA, ATA LLC, and SAA were insolvent insurers and permitting the liquidation to proceed. A final order appointing the Commissioner as receiver for purposes of liquidation was entered on May 20.

On June 21, Mr. Worthy and the "Respondents"[1] filed separate motions to Alter or Amend and to Make Additional Findings of Fact. Mr. Worthy asserted as grounds that "the Commissioner cannot be appointed receiver of Respondents Smart Data Solutions, LLC, American Trade Association, Inc., American Trade Association, LLC and Serve America Assurance absent a finding that at least one of the Respondents was an insurer engaged in the insurance business in the State of Tennessee." In support of their motion, the Respondents filed a supplemental affidavit of Bart Posey and asserted that SDS was a third party administrator, not an insurer; Respondents also requested that the court make 10 amended and 20 additional findings of fact. On July 14 the court denied both motions but clarified certain statements in the April 14 and April 27 orders; in the July 14 order the court explained that "the statements by the Court . . . that Beema and/or Serve America did not exist were not meant literally but were used as a short form reference" to the following findings:

- Serve America does not exist in the United States
- Serve America has never issued a policy to an entity in the United States
- Beema has denied ownership of Serve America
- Insurance coverage with Beema/Serve America is unauthorized and nonexistent coverage
- With Beema and Serve America there is no insurance underwriting company to fund and direct payment of claims
- Beema and Serve America do not write insurance in the United States
- The Beema/Serve America insurance product is a sham and posed a significant risk of nonpayment of claims
- In the United States there is no Beema/Serve America insurance product in place

In response to arguments raised in the motions, the court reiterated its previous findings that ATA and SDS had engaged in conduct that constituted the transaction of insurance business and that SDS had "exceeded and altered its role from benefits administrator to insuror."

---

[1] The motion does not specify which of the named respondents were a party to the motion.

SDS and ATA[2] appeal, contending that they are not "insurers" subject to the Act. Mr. Worthy appeals separately, raising the issue of whether the appointment of a receiver is authorized "where the trial court has found that any insurance coverage was nonexistent, that there is no underwriter, and that there is no insurance company for the state to liquidate."

## II.  Standard of Review

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 199 S.W.3d 632, 635 (Tenn. 2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 199 S.W.3d at 635.

## III.  Discussion

### A.  The Tennessee Insurers Rehabilitation and Liquidation Act

The Tennessee Insurers Rehabilitation and Liquidation Act, codified at Tenn. Code Ann. § 56-9-101 *et seq*, provides "a comprehensive scheme for the rehabilitation and liquidation of insurance companies . . . ." Tenn. Code Ann. § 56-9-101(d)(7). The purpose of the Act is to protect "the interests of insureds, claimants, creditors, and the public generally," Tenn. Code Ann. § 56-9-101(d), through, *inter alia*, "[e]arly detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures." Tenn. Code Ann. § 56-9-101(d)(1). The Act authorizes proceedings against the entities specified at Tenn. Code Ann. § 56-9-102, including "insurers" as defined at Tenn. Code Ann. § 56-9-103(14).

Tenn. Code Ann. § 56-9-104 gives the Commissioner of Commerce and Insurance sole authority to initiate a "delinquency proceeding" against an insurer; this proceeding includes "any proceeding instituted for the purpose of liquidating, rehabilitating, reorganizing, or conserving an insurer, and also any summary proceeding." Tenn. Code Ann. § 56-9-103(4). Summary proceedings may be instituted against an insurer where the interests of policyholders, creditors, or the public will be endangered by delay. Tenn. Code Ann. § 56-9-201(a)(2).

The Commissioner may initiate a summary proceeding by filing a petition in Davidson County Chancery Court. Tenn. Code Ann. § 56-9-201. A court may issue the requested

---

[2] Both ATA and ATA LLC were named as respondents in the receivership action, and the court's orders are applicable to both; ATA LLC is not a party to this appeal.

order *ex parte* and without a hearing where the Commissioner has shown, in addition to demonstrating the harm of delay, the existence of any grounds that would justify a formal delinquency proceeding and that the Commissioner deems the order necessary. Tenn. Code Ann. § 56-9-201(b). An order issued through a summary proceeding permits the Commissioner to take possession of the insurer and its property, books, accounts, documents, and other records; the order may also enjoin the insurer and its officers, managers, agent, and employees from disposing of the property and from transacting business, except upon written consent of the Commissioner. *Id.* In essence, the order freezes the operation of the insurer and places it under the control of the Commissioner. The order must set forth its duration, Tenn. Code Ann. § 56-9-201(c), and the insurer may petition the court at any time for a hearing and review; when review is sought, the court must set a time for a hearing not more than fifteen days after the request. Tenn. Code Ann. § 56-9-201(e).

Tenn. Code Ann. §§ 56-9-301–337 govern formal proceedings and permit the Commissioner to petition the court for an order to rehabilitate the insurer under Tenn. Code Ann. § 56-9-301 and/or an order of liquidation under Tenn. Code Ann. § 56-9-305. Rehabilitation of an insurer may be pursued on any of the grounds at Tenn. Code Ann. § 56-9-301. Under Tenn. Code Ann. § 56-9-305(a), "[w]henever the commissioner believes further attempts to rehabilitate an insurer would substantially increase the risk of loss to creditors, policyholders or the public, or would be futile, the commissioner may petition the chancery court of Davidson County for an order of liquidation." Grounds for liquidation are set forth at Tenn. Code Ann. § 56-9-306 and are as follows:

> (1) [] any ground for an order of rehabilitation as specified in § 56-9-301, whether or not there has been a prior order directing the rehabilitation of the insurer;
> (2) That the insurer is insolvent; or
> (3) That the insurer is in such condition that the further transaction of business would be hazardous, financially or otherwise, to its policyholders, its creditors or the public.

**B. Respondents in the Proceeding**

The following is shown by the affidavits and exhibits in the record:

ATA was incorporated under the laws of the State of Indiana on July 8, 1986 under the name Transportation Services Association, Inc.; the name was changed in 2009 to American Trade Association, Inc. ATA qualified to do business in Tennessee in May 2009; the application for certificate of authority listed the principal office as 4676 Highway 41 North, Springfield, Tennessee 37172.

7

ATA LLC was chartered in Arkansas as a limited liability company on February 8, 2008, with a business address of 4676 Highway 41 North, Springfield, Tennessee 37172; Bart Posey is the owner of ATA LCC.

SDS was formed as a Tennessee limited liability company in November 2005; the address of the registered agent and office was listed on its articles of organization as 4676 Highway 41 North, Springfield, Tennessee 37172. On January 24, 2006, SDS applied for a license as a business entity insurance producer in Tennessee; the application was incomplete and SDS was not granted the license it sought.

There are no organizational or corporate documents in the record relative to SAA. The Petition alleges the following with respect to SAA:

> Respondent Serve America Assurance ("SAA"), on information and belief, was incorporated in South Carolina as a Limited Liability Company on February 5, 2009 and was dissolved on September 3, 2009. . . . The name "Serve America Assurance" on materials issued by SDS and ATA is represented to be the underwriter of the ATA's group insurance coverage. No records of a corporation or business known as, or starting with the terms "Serve America Assurance" are found on the Tennessee Secretary of State's official website. The existence of Respondent SAA cannot be confirmed or determined other than it was incorporated, although activities using the name Serve America Assurance have been carried on by other Respondents. SAA policies state their Administrative Office is: SDS LLC at its 4676 Highway 41 North, Springfield, Tennessee address. . . . The Commissioner has located no record of a company by such name authorized to conduct business as an insurance company anywhere in the United States. Serve America Assurance, Ltd. may be and has sometimes been described as a wholly-owned alien captive insurance company subsidiary of Beema-Pakistan Company, Limited, of P. O. Box 5626, Karachi-7400, Pakistan (Beema) in certain materials allegedly furnished to SDS and ATA; however, Beema denies owning any subsidiary, company or legal entity outside Pakistan. . . .

Bart Posey was licensed by the State of Tennessee as an insurance producer to sell property and accident and health insurance from February 26, 1999 until his license expired on March 31, 2009. Mr. Posey was the organizer of Smart Data Solutions, LLC, was listed in the articles of organization as "Owner," and signed the 2007 annual report as "President/Manager." Mr. Posey was also listed as a director on ATA's application for a certificate of authority to do business in Tennessee.

8

Angie Posey was licensed by the State of Tennessee as an insurance producer to sell casualty insurance from April 5, 2000 to April 4, 2001. Ms. Posey signed the SDS 2008 annual report as "Secretary" and was listed on ATA's application for a certificate of authority to do business in Tennessee as a director.

Obed W. Kirkpatrick, signator on articles of dissolution of ATA filed in Indiana on March 1, 2010, held a license as an insurance producer issued by the State of Tennessee; the license was revoked in February 2007. Mr. Kirkpatrick was identified as President of ATA in its application for certificate of authority to do business in Tennessee and on ATA's 2009 Indiana Business Entity Report.

Richard Bachman was listed on ATA's application for certificate of authority to do business in Tennessee as its Vice President. At the time of the filing of the petition, Mr. Bachman was an insurance producer licensed by the State of Tennessee to sell life, accident, and health insurance.

Linda Kirkpatrick was listed on ATA's 2009 Indiana Business Entity Report and ATA's application for authorization to conduct business in Florida as secretary of ATA.

Kristy Wright was listed as treasurer on ATA's application for authorization to conduct business in Florida. She had applied for an insurance producer license but did not pass the required examination.[3]

William Worthy was a licensed insurance producer in Tennessee; his license was revoked in 2006. Mr. Worthy signed the articles amending the name of Transportation Services Association, Inc. to American Trade Association, Inc. as President and was listed on ATA's 2007 and 2008 Indiana Business Entity Report as President. At times pertinent to these proceedings Mr. Worthy was affiliated with SouthEast Insurance Advisors, LLC.

Colin Yuell signed a Master Policy of Insurance issued by SAA as President.

**C. Discussion**

### 1. Whether SDS and ATA are Insurers

SDS and ATA contend that an "insurer" is "one who undertakes a contractual obligation to indemnify another against loss, liability, or damages caused by a contingent or

---

[3] Ms. Wright was dismissed from the action after the trial court determined that she was not an officer or director of any of the respondent entities.

unexpected event" and that the trial court failed to find such an obligation on their parts; they assert that, as a consequence, the seizure and liquidation provisions of the Act do not apply to them. SDS and ATA rely on the definition of "contract of insurance" set forth in *Am. Sur. Co. of New York v. Folk*, 135 S.W. 778 (Tenn. 1911) and Tenn. Code Ann. § 56-7-101(a), as well as the definition of "insurer" at Tenn. Code Ann. § 56-53-101(6),[4] and assert that the "insurance business," as incorporated in the definition of insurer at § 56-9-103(14), is limited to the making of insurance contracts.

We do not read *Folk* so narrowly. While the case stands for the proposition that making contracts of insurance is *an* insurance business, it does not hold that making such contracts is the *only* activity constituting the "insurance business"; neither does it limit a court in considering whether other activities, including those set forth in Tenn. Code Ann. § 56-9-103(5) and Tenn. Code Ann. § 56-2-107 are consistent with the transaction of insurance business and, thereby, subject to the Act.

While "insurance business" is not defined in the Act, the definition of "doing business" is set forth and includes any of the following acts:

(A) The issuance or delivery of contracts of insurance to persons resident in this state;
(B) The solicitation of applications for the contracts, or other negotiations preliminary to the execution of the contracts;
(C) The collection of premiums, membership fees, assessments or other consideration for the contracts;
(D) The transaction of matters subsequent to execution of the contracts and arising out of them; or
(E) Operating under a license or certificate of authority, as an insurer, issued by the department of commerce and insurance;

Tenn. Code Ann. § 56-9-103(5). In addition, Tenn. Code Ann. § 56-2-107 states:

Any of the following acts in this state, effected by mail or otherwise by an unauthorized insurer, are included among those deemed to constitute transacting insurance business in this state:

(1) The issuance or delivery of contracts of insurance to residents of this state;

---

[4] Chapter 53 of Title 56 addresses insurance fraud and the definitions set forth at Tenn. Code Ann. § 56-53-101are applicable to that chapter. Inasmuch as this was a proceeding under the liquidation statutes at Chapter 9, the appropriate definition is that contained at Tenn. Code Ann. § 56-9-103(14).

(2) The solicitation of applications for contracts of insurance;

(3) The collection of premiums, membership fees, assessments or other considerations for contracts of insurance; or

(4) The transaction of matters subsequent to the execution of contracts of insurance and arising out of them.

Tenn. Code Ann. § 56-2-107. Considering the activities embraced within these definitions, the record in this case fully supports the finding that ATA and SDS were "insurers" subject to the Act.

The arrangement between the various parties was memorialized in an undated "To Whom it may concern" letter on Beema-Pakistan letterhead and signed by the "Chief Underwriter," which stated:

> This letter will confirm our structure of our program. Serve America Assurance, Ltd., an offshore captive, owned by Beema-Pakistan Company Limited, has issued a Master Policy to American Trade Association, Inc. to insure all of its members through our Mini Medical Indemnity Policies. The plans are marketed to the association members and are administered through Smart Data Solutions, LLC.

In a March 10, 2008 letter written on the letterhead of SouthEast Insurance Advisors, LLC, Mr. Worthy notifieds Mr. Posey that:

> As per the approval from Beema Insurance Co. LTD and Serve America Assurance And [sic] under my authority as the United States Representative for the above entities, your firm is appointed as the approved Third Party Administrator for these plans effective 1-1-08. SDS, LLC agrees to maintain proper licensing and E&O Coverage for its officers and employees as part of this agreement.

> You are authorized to bill and collect premium and remit net insurance premium to our trustee, Ron Ehli, of EZ-Pay Financial Services. You are authorized to pay claims for the mini-med plans, the high access Cat plans, the per occurrence plans and the accident/medical plan. Twice monthly you will forward a list of claims to be paid along with the dollar amount of the benefits. The funds will be wired directly to your claims account by our trustee and you will release the checks upon the receipt of funds.

A March 18, 2008 letter on the letterhead of Beema-Pakistan Company LTD by Colin

11

Youell[5] to "The Directors of SouthEast Insurance Advisors, LLC" states in part:

> We thank you, for the presentation and opportunity, to provide coverage under any of the club Mini Medical plans 100 to 1000.
> You are now hereby authorized to attach coverage to us, this authority, extends to allow you, to Bind and collect premium as per the rates quoted in the documents submitted to us.
> We backdate this facility to the first of Feb 2008 subject to no known or reported losses.
> We do require you to set up separate bank accounts forth-with.

Consistent with the foregoing, a document entitled "Master Policy of Insurance" was issued by SAA and signed by Colin Youell, as President; the administrative office listed on the policy was: SDS, LLC, 4676 Highway 41 North, Springfield, TN 37172. Thereafter, SDS accepted premiums from ATA members and, upon approval from SAA representatives including Mr. Worthy, paid claims from an account maintained for that purpose, referred to as the "Claims Account."

The record contains copies of email correspondence between Mr. Posey and Mr. Worthy from January 23, 2008 to January 4, 2010, many of which sought Mr. Worthy's approval to pay insurance claims or requested that Mr. Worthy "wire" money to cover claims or other expenses. Other emails from Mr. Worthy requested that various SDS and ATA employees, including Angie Posey, Kristy Wright, and Richard Bachman, send reports or wire money to Mr. Worthy; in some instances, Mr. Worthy refers to the money in general terms as "premiums." David White, Examiner in Charge for the Tennessee Department of Insurance, reviewed bank records of ATA and SDS[6] as well as collection data from Paylogix, Inc., the company responsible for automatically drafting the accounts of SDS's, ATA's, and SAA's customers, and reported that $14,409,340.29 was collected from 12,400 policyholders on behalf of SDS and ATA from August 2008 to November 2009; the funds were remitted to SDS and ATA and deposited into either the SDS Account 1 or the ATA Account. Significantly, Mr. White noted:

> 8. So far, all the documentation I have reviewed points to a pooling of the

---

[5] Mr. Youell signed the letter as "Director."

[6] The accounts were denominated SDS Account 1, SDS Account 2, the ATA Account, and the Claims Account. The signatories on SDS Account 1 and SDS Account 2 were Bart S. Posey and Angela Posey; on the ATA Account were Obed Kirkpatrick, Angela S. Posey and Kristy Wright; and on the Claims Account was Bart Posey.

funds of SDS and ATA, so that most money taken in by SDS goes into the general type SDS Account 1, and is then simply moved into the Claims Account where disbursements of claims payments are being made. . . . There does not appear to be any effort taken by SDS or ATA to specifically earmark or segregate funds which SDS has taken in from individual members employer groups to offset those group's individual benefit plan liabilities. Furthermore, it appears there may be comingling of the funds of SDS and ATA. The liabilities for claims payments for coverage are being shared by SDS and ATA, and among employer groups and anyone who has contributed funds to the pool.

* * *

14. The joint operation of SDS, ATA and SAA appears to perform the functions of an insurance company. The money gets deposited into SDS Account 1 and then the money is transferred into the Claims Account from which claims are paid, the same as an insurance company would do. . . .

Of particular relevance to the issues involved in this appeal was an agency proceeding in North Carolina. On February 9, 2009, the North Carolina Commissioner of Insurance issued a final agency cease and desist order against Bart Posey, SDS, and ATA, among others, specifically ordering them to cease and desist from "[r]eceiving or collecting any premiums, commissions, or other consideration for insurance issued by Beema." Among the extensive factual findings and grounds for the order was the Commissioner's finding that the insurance offered by respondents was "bogus" and had been issued by an "unauthorized insurer."

Despite the findings and order in the North Carolina proceeding, ATA and SDS continued to engage in activities described at Tenn. Code Ann. § 56-9-103(5)(A)–(D) and § 56-2-107. Robert Heisse, a fraud investigator with the Insurance Division of the Department of Commerce Insurance, interviewed 10 Tennessee residents who had either purchased insurance or paid premiums to SDS and ATA, or who failed to have their claims paid by SDS and ATA. Mr. Heisse attested that, in at least three cases, the acts by respondents had occurred after February 2009 and that "SDS has and continues to prepare and distribute insurance cards and fulfillment packages to enrollees of ATA LCC and ATA for this purported health insurance coverage [allegedly underwritten by SAA]." Attached to his supplemental affidavit were copies of an insurance card issued by American Trade Association with an effective date of April 1, 2010. In an affidavit filed on March 31, 2010 containing updated summaries of the bank accounts and financial activities of the respondents, Mr. White found, *inter alia*:

4. . . . The four accounts contain a total of approximately $1,201,830. SDS

and ATA continue to receive premium payments from policyholders located in all fifty states and the District of Columbia.

* * *

9. From January, 2008 to March 26, 2010, SDS Account 1, SDS Account 2, the ATA Account and the Claims Account took in approximately $21,000,000 million from policyholders . . . .

10. . . . A total of $5,274,131.14 was deposited into the Claims Account from SDS Account 1, SDS Account 2 and the ATA Account. All of the funds deposited into SDS Account 1, SDS Account 2 and the ATA Account came directly from Paylogix, CITM and policyholders. No funds were deposited into SDS Account 1, SDS Account 2 and the ATA Account by any insurance company other than deposits of approximately $112,000 from Transamerica Assurance in April, May and June of 2008. From May 2008 to March 26, 2010, the average total amount paid from the Claims Account was $263,000 per month. The average payment per claim to pay policyholders was $215. . . .

The evidence does not preponderate against the trial court's finding that the respondents, including SDS and ATA, undertook some or all of the activities listed under either Tenn. Code Ann. § 56-2-107 and Tenn. Code Ann. § 56-9-103(5) such that they were conducting insurance business.[7] This activity constituted conducting insurance business within the purview of Tenn. Code Ann. § 56-2-107 and Tenn. Code Ann. § 56-9-103(5) and was of a nature and character sufficient for the trial court to conclude that they were insurers under Tenn. Code Ann. § 56-9-103(14). Of particular significance is the course of conduct taken by SDS and ATA after February 2009, when they knew or should have known that SAA was an unauthorized insurer, yet continued to solicit customers, sell insurance and process payments and claims. As noted by the trial court, "no other reasonable inference can be drawn but that by the February 2009 date of the North Carolina order, the respondents knew or should have known that the Serve America/Beema insurance product was a sham and posed a significant risk of nonpayment of claims for ATA members."[8] Accordingly, SDS and ATA were subject to the Act and the authority of the Commissioner, including any

_____

[7] Even though not specifically raised as an issue on appeal, we affirm the trial court's finding that SDS and ATA "were collaborators and commingled funds such that the accounts and action of SDS and ATA shall be considered together and in totality in analyzing the question of insolvency."

[8] Indeed, in an October 21, 2009 email to Mr. Worthy, Mr. Posey recounted difficulty in receiving verification that a policy had actually been issued by Beema or Serve America and stated that he had been instructed "unless and until we receive some assurances and/or documentation of the exact relationship between Beema, Serve America and/or any other captive and/or Serve America or other entity . . . to decline to make further payments on the above."

14

liquidation proceeding instituted against them.[9]

### 2. Appeal of William Worthy

Mr. Worthy contends that the appointment of a receiver is not authorized, since the court found the insurance to be non-existent. We respectfully disagree.

At the outset, we address whether Mr. Worthy has standing to raise the issue of the authority of the receiver relative to SDS or ATA. The petition only seeks relief against Mr. Worthy for purposes of injunctive relief, securing his cooperation in the liquidation, and insofar as he may have control or custody of the assets of the ATA entities, SDS and/or SAA. In order to establish standing a party must show: (1) a distinct and palpable injury that is more than conjectural or hypothetical; (2) a causal connection between the claimed injury and the challenged conduct; and (3) that the alleged injury is capable of redress by a favorable decision of a court. *American Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *Metro. Air Research Testing Auth., Inc. v. The Metro. Gov't of Nashville and Davidson Cty*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). While Mr. Worthy does not assert any distinct injury as a result of his inclusion in the proceedings and the appointment of a receiver, to the extent he is subject to the injunctive orders of the court and charged to cooperate with the receiver, as well as to resolve all issues raised in this appeal, we will address this issue.

The purpose of the Act as set forth at Tenn. Code Ann. § 56-9-101(d) is "the protection of the interests of insureds, claimants, creditors and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers . . . . "; the Act is to be liberally construed to effect its purposes. Even though there was no actual insurance in force, ATA and SDS sold coverage, received premiums and paid claims from March 2008 until stopped by the court's orders; as noted, they transacted the business of insurance. The fact that there was no policy in force means only that there are no "insureds" as that term is used at § 56-9-101(d). Those who purchased what was represented to them to be insurance are now claimants or creditors of ATA and SDS. The appointment of a receiver for purposes of liquidation of these companies under the circumstances presented is fully authorized by the Act and consistent with its purposes.

---

[9] We have reviewed the record and affirm the court's finding that, for purposes of Tenn Code Ann. § 56-9-306, SDS, ATA and ATA LLC are insolvent.

## IV. Conclusion

For the foregoing reasons, the final order of the court appointing the Commissioner as receiver for purposes of liquidation is affirmed.

_____
RICHARD H. DINKINS, JUDGE